[No. 27446.   Department One.   December 5, 1939.]

CINEBAR COAL & COKE COMPANY, *Appellant,* v.
GEORGE A. ROBINSON *et al., Respondents.*

CINEBAR COAL & COKE COMPANY, *Appellant,* v.
ROSE GALVIN *et al., Respondents.*[1]

[1]Reported in 97 P. (2d) 128.

*John F. McCarthy* and *C. D. Cunningham*, for appellant.

*Ponder & Ponder* and *J. H. Jahnke*, for respondents.

ROBINSON, J.—Cinebar Coal & Coke Company, prior to the tax foreclosure sale hereinafter referred to, was the owner of the two sections of land in Lewis county, Washington, hereinafter referred to. It permitted the taxes on the property for the years 1926, 1927, 1928, and 1929 to become delinquent.

On August 8, 1936, a certificate of delinquency, covering approximately one thousand separate pieces of property the taxes on which had been delinquent for more than five years, including the two tracts owned by Cinebar Coal & Coke Company, was issued to the county. The county instituted proceedings to foreclose the tax liens upon the property included in the certificate. Notice and summons were served upon the defendants by publication in the official newspaper of the county in the manner prescribed by statute. No appearance in the cause was made by Cinebar Coal & Coke Company.

On October 21, 1936, a judgment of foreclosure and order of sale was signed by the court and attested by the clerk. The judgment and order of sale was in book form, with duplicate pages inserted which, when detached, constituted an exact copy of the judgment and order of sale. The copy of the judgment and order of sale was also signed by the court and attested by the clerk. The judgment and order of sale directed the county treasurer to sell the property therein described according to law. The copy of the judgment and order of sale, so signed by the court and attested by the clerk, was delivered to the treasurer. The treasurer advertised the property for sale by posting notices in the manner prescribed by statute.

At the sale, which was held on November 6, 1936, George A. Robinson became the purchaser of one of the tracts above mentioned, section 18, township 13 north, range 3 east of Willamette meridian, except lots five and six (5 and 6) and the southeast quarter ($SE\frac{1}{4}$) of the southeast quarter ($SE\frac{1}{4}$) of the section. Rose Galvin became the purchaser of the other section, less twenty-five acres of the northwest quarter ($NW\frac{1}{4}$). Deeds to the respective tracts were issued to the purchasers and filed for record with the county auditor. Thereafter, George A. Robinson sold the timber on the tract purchased by him to Tacoma Eastern Timber Company, and that company sold or assigned its title to the timber to Fairhurst Company.

On August 10, 1937, Cinebar Coal & Coke Company instituted suit against George A. Robinson, alleging that it was the owner of the land purchased by Robinson and seeking a decree quieting its title. It also instituted a suit against Rose Galvin, which was in all respects similar to the suit against Robinson, except that the property involved was the tract of land purchased by Mrs. Galvin at the foreclosure sale. The defendants in each suit filed an answer, claiming ownership of the property under and by virtue of the deeds issued to them by the treasurer of Lewis county. Plaintiff filed a reply, alleging certain irregularities in the tax foreclosure proceedings, which will be hereinafter noticed. The two cases were consolidated for trial. After a trial before the court, a decree was entered in each case dismissing the complaint of the plaintiff and quieting the title claimed by defendants. The plaintiff perfected an appeal in each case, but the two appeals were consolidated for hearing in this court.

Appellant contends that the judgment in the tax foreclosure proceeding was not on file with the clerk until after the date of the foreclosure sale, and,

therefore, no valid judgment was in existence at the time the sale was held. Evidence was introduced by appellant which tended to prove that certain entries in the appearance docket, including the entry of the filing of the judgment, were not made until after the date of the sale, and that a file mark made with a rubber stamp on the cover of a book containing the judgment and order of sale had been altered by some one, who erased the date of filing stamped with the rubber stamp, and inserted with a pen the date, October 21, 1936. The trial court, as appears in its long and carefully prepared memorandum decision, was of the opinion that the evidence showed that the entries in the appearance docket were made after the date of the sale, probably in December, 1936, but found, and we find also, that the judgment of foreclosure and order of sale was signed by the court and attested by the clerk on October 21, 1936, and delivered to the clerk for filing on that date.

The fact, if it be a fact, that the entries in the appearance docket were not made until after the date of the sale, would not affect the validity of the judgment and order of sale or invalidate the sale had thereunder. A judgment is operative from the date of its entry, and it is entered when it is signed by the court and delivered to the clerk for filing. The failure of the clerk to perform the ministerial act of entering the filing of the judgment on the appearance docket or spreading the judgment upon the journal would not affect the validity of the judgment or invalidate the sale had thereunder. As is said in Freeman on Judgments at page 76:

"In most jurisdictions the failure of the clerk to enter a judgment rendered by the court does not deprive it of its effect between the parties to it. It is therefore not indispensable to the validity of an exe-

cution and a sale made thereunder that the judgment should have been actually entered before the writ issued; and even though entry be regarded as essential, it may be made nunc pro tunc."

Our previous decisions are in accord with the general rule. We quote from *Quareles v. Seattle*, 26 Wash. 226, 66 Pac. 389:

"When the judgment was signed by the court it was rendered, and, when it was filed by the clerk, became effective as a judgment. An execution might then have issued upon it. The fact that the clerk did not actually spread it upon the journal on that day, but waited seven days thereafter, did not delay the operation of the judgment for any purpose. The duty of copying the order was a ministerial duty, and imperative upon him. Under the statutes, *supra*, while the legislature may have recognized the distinction between the rendition of a judgment and its entry, yet the latter was required to be done upon the same day as the former, so that for all practical purposes, if the law is complied with, the rendition and entry of the judgment are simultaneous in point of time; that is to say, they are both to be done on the same day. It is often impracticable, on account of accumulation of business, for the clerk to comply with this law at the time designated, and, since the actual entry of the judgment on the journal is but a mere ministerial duty, the judgment is not thereby avoided. To hold that a judgment is not entered when it is filed and that the clerk may keep it for a number of days thereafter, awaiting his convenience or pleasure in transcribing it upon the journal, would be to hold that it is within the power of the clerk to delay indefinitely the time in which an appeal may be taken, and to leave the actual entry uncertain, and resting in the memory of the clerk or his deputy who transcribes it, or, if the date it is actually written on the journal is the date of the entry, then the requirement that it shall be entered on the day it is given is rendered of no effect. Certainty will be maintained and confusion avoided by holding, as we do, that under the statute

the judgment is entered at the time a copy thereof is filed with the clerk."

See, also, *Barthrop v. Tucker*, 29 Wash. 666, 70 Pac. 120; *Beetchenow v. Bartholet*, 162 Wash. 119, 298 Pac. 335; 15 R. C. L., Judgments, 571, § 5; 34 C. J., Judgments, 52, § 182; Black on Judgments (2d ed.), 149, § 106.

■ Appellant further contends that the sale was void for lack of authority in the county treasurer to make it. In Rem. Rev. Stat., § 11281 [P. C. § 6882-120], it is provided that the court shall give judgment for such taxes, interest, and costs as shall be due upon the several lots or tracts involved:

". . . *and the court shall order and direct the clerk to make and enter an order for the sale of such real property against which judgment is made,* or vacate and set aside the certificate of delinquency or make such other order or judgment as in the law or equity may be just. *Said order shall be signed by the judge of the superior court and attested by the clerk thereof, and a certified copy of said order, together with the list of the property therein ordered sold, shall be delivered to the county treasurer, and shall be full and sufficient authority for him to proceed to sell said property* or so much of each tract or lot as may be necessary for said sum as set forth in said order and to take such further steps in the matter as are provided by law. . . ." (Italics ours.)

The clerk delivered to the county treasurer a purported copy of the entire judgment. On each page is stamped:

"Superior court
Lewis County, Wash.
Rec'd & Filed
Oct. 21, '36
Maurice MacDonald, Clerk
By......................................................................................................
         Deputy."

Across the face of the stamp, as it appears on each page, is the word "Copy," admittedly written by the clerk. It is contended that this is not a sufficient certificate and the treasurer had no jurisdiction to proceed with the sale. The statute, it will be noted, provides that a *certified copy of the order of sale,* together with a list of the property therein ordered sold, shall be delivered to the county treasurer, and that this "shall be full and sufficient authority for him to proceed to sell said property." At the foot of each and every page of the purported copy of the judgment containing the lists of the property, the following appears:

"Now Therefore, in the name of the State of Washington: You, Harold Quick, County Treasurer in and for said County, or your successor in office, are hereby ordered and directed to sell according to law, the premises hereinbefore mentioned, together with the appurtenances thereunto belonging, or so much thereof as may be necessary to satisfy the judgment herein, together with accruing interest and cost.

C. A. Studebaker, Judge

Attest: Maurice MacDonald,

County Clerk and Clerk of the Superior Court.

By......................................................................................................................................

Deputy."

It is admitted, or at least it is undisputed, that on each page the signatures of the judge and the clerk are their original signatures.

It appears from the evidence that the treasurer occasionally had the original judgment in his office after it was entered and prior to the sale, and that the clerk delivered to him a duplicate original of the order of sale at the time he attested it. The duplicate original came into existence in the following manner:

The judgment was prepared in the treasurer's office and under his supervision. It was bound up in a book

with duplicate pages. The treasurer delivered the book to the clerk, who presented it to the trial judge. The judge signed it, including the order of sale at the bottom of each and every page, and returned it to the clerk for attestation of the order of sale and for filing. The clerk called the treasurer and told him that the judge had signed and that he was attesting his signature to the order of sale. The treasurer went to the clerk's office. When the clerk had finished attesting the judge's signature, he had before him complete duplicate originals of the judgment and the order of sale. In the presence of the treasurer, the clerk affixed his file mark to each page. The treasurer then assisted him in tearing out every other page. These were assembled, and the clerk wrote "Copy" across the file mark on each of these pages and gave them to the treasurer; and so, instead of a formally certified copy of the order of sale, the treasurer was furnished with a duplicate original order of sale, signed by the judge and attested by the clerk.

In view of the fact that the statute does not specify how the copy shall be certified, and in view of the further fact that the purpose of requiring certification is to insure that the treasurer shall receive a true and correct copy of the order of sale, we think that the furnishing of a duplicate original was a sufficient compliance with the statute, particularly since the statute involved is a tax-collection statute.

In considering these cases, it must be remembered that we are not only dealing with tax-collection statutes, but also that the actions are collateral attacks upon a judgment in a tax foreclosure in which approximately a thousand pieces of property are involved and sales made to hundreds of other purchasers. Under such circumstances, when the proceedings are attacked collaterally, departures from the regulatory statutory

provisions are regarded as fatal only when the complaining party is thereby denied some substantial right which would have been his had the statutory regulation been pursued strictly according to its terms (*Miller v. Henderson*, 50 Wash. 200, 96 Pac. 1052), or lack of jurisdiction is affirmatively shown. When the attack is collateral, all presumptions are in favor of the regularity of the proceedings (*Timmerman v. McCullagh*, 55 Wash. 204, 104 Pac. 212); and, as we have said in the much later case of *Colby v. Himes*, 171 Wash. 83, 17 P. (2d) 606:

"Section 127, chapter 130, Laws 1925, Ex. Ses., p. 314 (Rem. 1927 Sup., § 11097-127), *supra*, clearly indicates the legislative intention to make tax deeds good as against technical or immaterial procedural defects not going to the merits. Such has long been both the legislative and judicial policy in this state."

That section is now Rem. Rev. Stat., § 11288 [P. C. § 6882-127], and reads as follows:

"Deeds executed by the county treasurer, as aforesaid, shall be prima facie evidence in all controversies and suits in relation to the right of the purchaser, his heirs and assigns, to the real property thereby conveyed of the following facts: First, that the real property conveyed was subject to taxation at the time the same was assessed, and had been listed and assessed in the time and manner required by law; second, that the taxes were not paid at any time before the issuance of deed; third, that the real property conveyed had not been redeemed from the sale at the date of the deed; fourth, that the real property was sold for taxes, interest and costs, as stated in the deed; fifth, that the grantee in the deed was the purchaser, or assignee of the purchaser; sixth, *that the sale was conducted in the manner required by law*. And any judgment for the deed to real property sold for delinquent taxes rendered after the passage of this act, except as otherwise provided in this section, shall estop all parties from raising any objections thereto, or to a

tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax has been paid, or the real property was not liable to the tax." (Italics ours.)

In our opinion, the treasurer is shown to have had jurisdiction to make the sale, and none of the irregularities shown is of such a character as can be held to have deprived the appellant of any substantial right. We, therefore, agree with the trial court that the tax foreclosure and sale must be held valid.

There remains the charge of collusive bidding. We have read all of the evidence relating to this matter and agree with the trial judge that the testimony of one of the witnesses in support of the charge is extremely vague and indefinite, and that the testimony of the witness who did testify definitely regarding the matter is, for the reasons set out in the memorandum decision, unworthy of credit. The evidence in support of the charge is, in our opinion, outweighed by that of the two bidders, George A. Robinson and Rose Galvin, even though they were interested parties.

The judgments appealed from are affirmed.

BLAKE, C. J., MAIN, SIMPSON, and STEINERT, JJ., concur.