

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE MAR 1 4 2019

CHIEF JUSTICE

This opinion was filed for record

at 8 a.m. on March 14, 2019

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 95479-8 |
| Respondent, | ) | |
| v. | ) | |
| ANTHONY J. SIMS | ) | |
| Respondent, | ) | |
| | ) | En Banc |
| DEPARTMENT OF SOCIAL & HEALTH SERVICES, and WESTERN STATE HOSPITAL, | ) | |
| Petitioners, | ) | |
| and | ) | Filed    MAR 1 4 2019 |
| Other Similar Cases Consolidated on Appeal. | ) | |

MADSEN, J.—This case concerns contempt sanctions imposed against the

Department of Social and Health Services (DSHS) for failing to timely complete

competency evaluations for criminal defendants. Specifically at issue is whether the

State has waived its sovereign immunity under RCW 7.21.030 as regards the imposition

of interest concerning imposed contempt sanctions. We find no waiver under this

statute's plain language or in the context presented. We also determine whether remedial sanctions run from the date of the trial court's oral ruling imposing the sanctions or the filing of the written sanction order. We hold that the oral ruling determining contempt and imposing sanctions triggers the running of the contempt sanctions. Accordingly, we affirm the Court of Appeals in part and reverse in part, as explained below.

FACTS

This case is a consolidation of multiple cases brought by criminal defendants against DSHS and state hospitals for the State's failure to provide timely competency evaluations to the criminal defendants.[1] In these cases, DSHS and the hospital appealed contempt sanctions that were imposed for delays in providing the competency evaluations. The parties agree that the facts in *State v. Sims*, 1 Wn. App. 2d 472, 406 P.3d 649 (2017), serve as a template for all of these appeals. *See* Suppl. Br. of Resp't at 3; Suppl. Br. of DSHS at 3.

---

[1] In each of the following cases, which were consolidated in the Court of Appeals, DSHS and a state hospital appealed contempt sanctions that were imposed for delays in providing competency evaluations and/or restoration services to criminal defendants: No. 34120-8-III, *State v. Sims*; No. 34121-6-III, *State v. Larson*; No. 34122-4-III, *State v. Owen*; No. 34123-2-III, *State v. Johnston*; No. 34124-1-III, *State v. Cooper*; No. 34125-9-III, *State v. Blake*; No. 34126-7-III, *State v. Pal*; No. 34127-5-III, *State v. Fairfield*; No. 34128-3-III, *State v. Tall*; No. 34129-1-III, *State v. Spain*; No. 34130-5-III, *State v. Lennartz*; No. 34131-3-III, *State v. McCarthy*; No. 34132-1-III, *State v. Alexander*; No. 34133-0-III, *State v. Fleming*; No. 34134-8-III, *State v. Fletcher*; No. 34135-6-III, *State v. Schilling*; No. 34136-4-III, *State v. Montoya*; No. 34137-2-III, *State v. Sackmann*; No. 34138-1-III, *State v. Rettinger*; No. 34139-9-III, *State v. Anderson*; No. 34140-2-III, *State v. Graham*; No. 34141-1-III, *State v. Keranen*; No. 34142-9-III, *State v. Fregoso*; No. 34143-7-III, *State v. Beggs*; No. 34180-1-III, *State v. Sandstrom*; No. 34205-1-III, *State v. Lopez*. Two sanction orders were entered in the cases of defendants *Fairfield* and *Tall*. Accordingly, a total of 28 sanction orders are at issue.

2

In 2014, the State charged Anthony J. Sims with second degree burglary. *Sims*, 1 Wn. App. 2d at 477. When a question as to Sims's competency arose, his case was stayed on October 14, 2014. The stay order directed that a competency evaluation be conducted in accordance with chapter 10.77 RCW. On November 13, 2014, Sims filed a motion to compel his competency evaluation because the hospital had still not yet conducted his evaluation.[2] On November 20, the trial court held a hearing on the motion, at which time the State reported that Sims was and always had been scheduled to have his evaluation on December 15. At the conclusion of the hearing, the trial court ordered DSHS to perform Sims's competency evaluation by December 2. The trial court's order was not reduced to written form.

On November 26, 2014, Sims filed a motion asking the trial court to order DSHS to show cause for its failure to schedule his evaluation in compliance with the court's November 20 order. Sims asked the court to impose remedial sanctions of $500 per day against DSHS for every day past December 2 until he received his competency evaluation.

A hearing on this motion began on December 11, 2014, at which time the trial court heard from Sims and five other similarly situated defendants. During this hearing, DSHS presented evidence that the state hospital was having difficulty completing competency evaluations due to insufficient funding and personnel in light of the

---

[2] In 2014, former RCW 10.77.068(1)(a)(i) (2012) provided a performance target of 7 days or less for a defendant's pretrial competency evaluation. The current statute retains the 7 day target and adds a maximum time limit of 14 days. *See* RCW 10.77.068(1)(a)(i).

3

hospital's large scope of responsibility. At the conclusion of this hearing, on December 12, the trial court orally imposed sanctions on DSHS in the amount of $200 per day for every day the evaluations were not completed in compliance with the prior court ordered deadlines.[3] Sims's competency evaluation occurred as originally scheduled on December 15. The trial court did not enter a written contempt order with findings until a month later on January 16, 2015.[4]

DSHS appealed the contempt sanctions to the Court of Appeals, Division Three.[5] The Court of Appeals held: (1) where a court imposes sanctions for contempt that did not occur in its presence, statutory sanctions are limited to remedial sanctions; (2) sanctions for past violations were impermissibly punitive rather than remedial, but remedial sanctions from the date of the order were appropriate; (3) nothing in the remedial sanctions statute requires a court to enter a written order prior to sanctions becoming effective; and (4) the State has impliedly consented to interest on statutory sanctions imposed against it. *Sims*, 1 Wn. App. 2d at 476, 480-81, 484. As a result, the Court of Appeals reversed the sanctions order to the extent it imposed punitive sanctions for past

---

[3] The trial court explained that the sanctions were remedial sanctions ordered in accordance with RCW 7.21.030 rather than in accordance with its inherent authority. The court directed the funds to go to the registry of the court, pending a later final disposition; but compensation to the defendants for actual losses was not contemplated. The court later amended its contempt order, specifying the sanctions were to be paid to the clerk of the court and directed to Spokane County Detention Services for the purpose of assisting mentally ill offenders in jail.

[4] The trial court held similar hearings in other cases where groups of defendants whose competency evaluations were not timely completed sought sanctions. At the conclusion of each hearing, the court, usually weeks later, entered a written order of contempt supported by findings.

[5] As noted, contempt sanctions were imposed in 28 individual orders entered in the cases of the 26 defendants consolidated in the present matter. The sanctions collectively totaled $337,500. Each judgment also included interest at 12 percent per year.

4

delays where DSHS had no opportunity to purge the contempt. However, it upheld remedial sanctions running from the date of the oral sanctions order until the date that the competency evaluation was completed, finding these sanctions permissible under the contempt sanctions statute, RCW 7.21.030. *Sims*, 1 Wn. App. 2d at 482-83.

Relevant here, the Court of Appeals rejected DSHS's argument that as to the remedial sanctions, the State's sovereign immunity precluded the accrual of statutory interest on unpaid sanctions. *Id.* at 484. The Court of Appeals further held that the sanctions order became effective when it was orally entered by the superior court, even though it was not reduced to writing for several weeks. *Id.* at 481, 484-85.

Judge Korsmo dissented in part. While the dissent agreed with the majority that an order need not be reduced to writing before it takes effect, it disagreed with the majority's conclusion that interest is available on contempt sanctions. *Id.* at 490-91 (Korsmo, J., dissenting).[6]

DSHS petitioned this court for review of the published Court of Appeals' split decision on two issues only: (1) whether the State consented to be subject to interest payments on the contempt sanctions and (2) whether a trial court's oral contempt ruling should not be considered effective until it is filed as a written order. This court granted review of these two issues.[7]

---

[6] Judge Korsmo opined that the Court of Appeals should reverse the contempt rulings in their entirety based on theories not argued by any party. *See Sims*, 1 Wn. App. 2d at 485 n.2; *id.* at 491-92 (Korsmo, J., dissenting).

[7] The appropriateness of imposing sanctions under the circumstances of this case is not before the court.

ANALYSIS

1. The State has not consented to liability for interest on contempt sanctions imposed under RCW 7.21.030

The doctrine of sovereign immunity requires a state to consent before a court can hold it liable for interest on its debts. *Our Lady of Lourdes Hosp. v. Franklin County,* 120 Wn.2d 439, 455-56, 842 P.2d 956 (1993) (quoting *Architectural Woods, Inc. v. State,* 92 Wn.2d 521, 524, 598 P.2d 1372 (1979)). Whether the legislature has waived the State's sovereign immunity by statute is a question of statutory interpretation that is reviewed de novo. *Union Elevator & Warehouse Co. v. Dep't of Transp.* 171 Wn.2d 54, 59, 248 P.3d 83 (2011). Waiver of sovereign immunity can be express or implied, whereby a state can place itself expressly, or by reasonable construction of a contract or statute, in a position of attendant liability. *Id.* Here, the Court of Appeals held that due to the comprehensive nature of relief afforded by the contempt sanctions statute, the State has impliedly waived its sovereign immunity as to interest payments on contempt sanctions. We disagree.

The issue is the effect of the remedial sanctions statute, RCW 7.21.030, specifically, whether it authorizes the imposition of interest. First, as demonstrated below, the statute's plain, unambiguous language does not provide for interest. Nor does the statute provide "comprehensive relief" that would warrant finding an implied waiver.

RCW 7.21.030 provides in relevant part that a court "may initiate a proceeding to impose a remedial sanction on . . . the motion of a person aggrieved by a contempt of court in the proceeding to which the contempt is related . . . [and] after notice and

hearing, may impose a remedial sanction" on a person in contempt. The statute lists the following available sanctions in subsection (2): (a) imprisonment, (b) "[a] forfeiture not to exceed two thousand dollars for each day the contempt of court continues," (c) an order designed to ensure compliance with a prior order of the court, (d) "[a]ny other remedial sanction . . . *if the court expressly finds* that those [above listed] sanctions would be ineffectual to terminate a continuing contempt of court," and (e) commitment to juvenile detention. RCW 7.21.030 (emphasis added). The statute further provides, "The court may, in addition to the remedial sanctions set forth [above], order a person found in contempt of court to *pay a party for any losses suffered by the party as a result of the contempt* and *any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees.*" RCW 7.21.030(3) (emphasis added). As can be seen, the plain language of the statute does not address, include, or provide for interest.

As DSHS notes, where the legislature has intended a waiver of sovereign immunity for interest, it has done so with express statutory language. *See* Suppl. Br. of DSHS at 9-10; see also RCW 4.56.110, .115 (expressly providing for interest on judgments founded on tortious conduct of the State); RCW 51.32.080(4) (addressing "interest paid on . . . permanent partial disability compensation"); RCW 82.32.060 (providing for interest on tax refunds).

Further, in *Union Elevator*, this court reiterated the rule applicable in this case, stating, "A waiver of sovereign immunity exists when the State has *expressly*, or by *reasonable construction* of a contract or statute, placed itself in a position of attendant liability." 171 Wn.2d at 68 (emphasis added). This court held:

7

The legislature enacted statutes expressly permitting interest on condemnation awards *but did not include similar language in the Relocation Act* [real property acquisition policy act (ch. 8.26 RCW)]. Furthermore, the legislature enumerated specific categories of costs and expenses compensable under the Relocation Act *but did not include interest* among these recoverable expenses. We will not do so impliedly.

*Id.* (emphasis added). The same is true here, and the same result follows.

The primary cases on which Sims relies, *Architectural Woods* and *Smoke*,[8] concern contracts or are otherwise distinguishable. This court addressed and distinguished those cases in *Union Elevator* as follows. Concerning *Architectural Woods* this court explained:

[T]he State impliedly waived sovereign immunity when the legislature statutorily authorized state colleges to enter into construction contracts with private parties. . . . Because *the State was acting in a private capacity*, we reasoned that the statute impliedly held the State to *"the same responsibilities and liabilities as [a] private party, including liability for interest."* *Architectural Woods*, 92 Wn.2d at 526-27.

*Union Elevator*, 171 Wn.2d at 62-63 (emphasis added) (third alteration in original).

Regarding *Smoke*, this court opined:

In *Smoke* we allowed an award for postjudgment interest when the city *"consent[ed] to suit for damages,"* thereby *"impliedly waiv[ing] immunity from the liabilities attendant to such claims."* *Smoke*, 132 Wn.2d at 228 (citing *Architectural Woods*, 92 Wn.2d at 526-27).

*Union Elevator*, 171 Wn.2d at 64 (emphasis added) (first and second alterations in original). By contrast, in the present case, the State has not acted like a private party or otherwise "placed itself in a position of attendant liability." *Id.* at 68. Accordingly, the

---

[8] *Smoke v. City of Seattle*, 132 Wn.2d 214, 937 P.2d 186 (1997).

underlying basis for finding an implied waiver of sovereign immunity as to payment of interest is not established here.

Moreover, the purpose of RCW 7.21.030 is clearly to compel compliance. The remedial sanctions the statute expressly authorizes provide the parameters for such coercion. Although imposing interest would comport with the statute's coercive purpose, such action would require adding language to the statute, which this court cannot do. *See State v. Glas*, 147 Wn.2d 410, 417, 54 P.3d 147 (2002) (courts may not add language to a clear statute).

Finally, while subsection (3) of the statute provides that in addition to the listed remedial sanctions, a court may order a person in contempt "to pay a party for any losses suffered by the party as a result of the contempt and any costs incurred in connection with the contempt proceeding, including reasonable attorney's fees," the present case does not involve damages (i.e. the present case concerns a defendant trying to compel DSHS to provide timely competency evaluations so his criminal prosecution may proceed). RCW 7.21.030. Also, the attorney fee provision here is limited to "costs incurred in connection with the contempt proceeding." *Id.*[9] Being so expressly limited, any reliance on the presence of an attorney fee provision in RCW 7.21.030 as indicating a legislative intent to provide "comprehensive relief" is not convincing. Again, the statute's plain language does not support the view that finding an implied waiver of sovereign immunity as to

---

[9] *Cf.* RCW 64.40.020. This statute, which was at issue in *Smoke*, provided landowners a cause of action for damages for arbitrary government agency action and attorney fees to the prevailing party, thereby providing "comprehensive relief" to aggrieved landowners. *See Union Elevator*, 171 Wn.2d at 64-65 (so noting).

payment of interest is warranted here. Accordingly, we reverse the Court of Appeals to the extent it determines otherwise.

2. An oral contempt order is considered effective immediately, before it has been reduced to writing

RCW 7.21.030(1) states, "Except as provided in RCW 7.21.050, the court, after notice and hearing, may impose a remedial sanction authorized by this chapter." RCW 7.21.050(1) instructs that "[t]he order of contempt shall recite the facts, state the sanctions imposed, and be signed by the judge and entered on the record." RCW 7.21.050(1) additionally requires the judge to impose sanctions "immediately after the contempt of court or at the end of the proceeding."

DSHS contends that the statutory requirement for findings of fact and purge conditions means that a written order is needed for contempt sanctions to become effective. Suppl. Br. of DSHS at 16 (citing *State v. Mecca Twin Theater & Film Exch., Inc.*, 82 Wn.2d 87, 92, 507 P.2d 1165 (1973)). DSHS is correct that the statute requires findings, *see* RCW 7.21.030(2) (*see also* RCW 7.21.050(2)), and purge conditions, *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 613, 359 P.3d 823 (2015), *review denied*, 185 Wn.2d 1020 (2016). But neither the statute nor our precedent requires remedial contempt orders to be put in writing in order to be enforceable. In *Mecca Twin Theater*, this court discussed what to do when a written contempt order entirely lacks findings of fact (remand for entry of findings) or contains findings of fact but lacks precision (examine the trial court's record). 82 Wn.2d at 92-93. That case says nothing about the enforceability of oral contempt rulings. Where the record concerning the oral contempt

ruling shows the basis for the ruling, indicates how the contempt may be purged, and demonstrates the contemnor had notice and hearing, the oral ruling is effective immediately.

We hold that while the governing statutes contemplate entry of a written contempt order, a trial court's oral order is effective immediately. Nothing in the statute subjects contempt orders to different rules than those that apply to other court orders, and DSHS's rights to notice and to appeal are not undermined by giving effect to an oral order. Accepting DSHS's view would mean that a party could delay the effectiveness of sanctions during the formalizing of an order, contrary to the purpose of contempt proceedings to ensure the orderly, timely, and efficient administration of justice.

A. Oral orders are effective and enforceable, even if they can be modified prior to being reduced to writing

DSHS argues that a person facing a verbal ruling of contempt is placed in a state of "legal limbo" where he or she will face the difficult task of appealing verbal rulings that remain subject to revision. Suppl. Br. of DSHS at 17. Because written orders are also subject to modification, and courts use oral rulings on a daily basis to conduct litigation, these concerns by DSHS are unfounded. As the Court of Appeals correctly noted, "The inability to modify an order should not be the touchstone for determining an order's enforceability." *Sims*, 1 Wn. App. 2d at 482.

First, written orders are also subject to modification. CrR 7.8(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own

initiative or on the motion of any party." In a situation where a party believes that the judge misspoke or the sanction was written down incorrectly, regardless of whether the order is written or oral, the order may be modified to meet the intent of the court. Thus, even if there were errors in the written contempt order, a judge is still able to modify the order, pursuant to CrR 7.8(a), to match the original transcript of proceedings.

Second, there is no reason why contempt orders should be treated differently from other orders. Parties are generally required to follow a trial court's oral rulings. If questions arise and a required written finding or conclusion is missing, the remedy is to remand for entry of a written order, not invalidation of the original oral order. *See, e.g.*, *State v. Head*, 136 Wn.2d 619, 624, 964 P.2d 1187 (1998); *State v. Wood*, 68 Wn.2d 303, 304, 412 P.2d 779 (1966); *State v. Helsel*, 61 Wn.2d 81, 83, 377 P.2d 408 (1962).

Moreover, compliance with oral rulings is critical to orderly court proceedings. For instance, when a court rules on a midtrial evidentiary objection or pretrial on the admission of a prior conviction or other evidence, the ruling is not hypothetical, or advisory; it is a final ruling that the parties must obey. *See State v. Austin*, 34 Wn. App. 625, 634, 662 P.2d 872 (1983) (Scholfield, J., concurring) (arguing that error can be assigned to a trial court ruling on a motion in limine due to the final nature of the order and the fact that the defendant is entitled to rely on it). This court has never suggested that contempt sanctions should be treated any differently than other oral rulings.[10]

---

[10] DSHS relies on dicta in *State ex rel. Wallen v. Noe*, stating that a judgment of contempt was inoperative because no written judgment of contempt was ever issued. 78 Wn.2d 484, 489, 475 P.2d 787 (1970). However, the issue of the oral order of contempt was not before the court as neither of the parties made the validity an issue on appeal. *Id.* Furthermore, the cases cited by

In sum, the fact that an oral order remains subject to modification by the court has no bearing on its immediate validity. Written orders may also be modified per CrR 7.8(a). In addition, the court system routinely relies on compliance with oral rulings to maintain the orderly and efficient administration of justice. We decline to depart from this system with respect to contempt orders.

B. Oral orders provide sufficient notice and adequately preserve issues for appellate review

DSHS's concerns about notice and appellate review are adequately protected with an oral order that is later reduced to writing. As to notice, RCW 7.21.030(1) mandates that a contempt sanction may be imposed only after notice and hearing. There is no argument here that DSHS lacked notice. While the effective appeal of a contempt order necessitates a written order, it does not follow that an oral order imposing sanctions is ineffective until reduced to writing. Appellate review is sufficiently preserved by the ability to remand for entry of written findings and the rule that in the event of a conflict, a written order will control over an oral ruling. *See Head*, 136 Wn.2d at 624 (remanding for needed findings of fact and conclusions of law). *See also State v. Dailey*, 93 Wn.2d 454, 459, 610 P.2d 357 (1980) (written decision of a trial court is considered the court's ultimate understanding of the issue presented).

---

the court simply articulate the long stated rule that a judgment is operative from its date of entry, having been signed by the court and delivered to the clerk for filing. *See id.; Cinebar Coal & Coke Co. v. Robinson*, 1 Wn.2d 620, 623, 97 P.2d 128 (1939). None of the authorities suggest an oral ruling that is later reduced to judgment is ineffective, nor do they contain any discussion on remedial contempt sanctions generally or the specific requirements of the remedial contempt statute. *See Wallen*, 78 Wn.2d 484; *Cinebar Coal*, 1 Wn.2d 620.

Contrary to DSHS's assertions, *Templeton v. Hurtado*, 92 Wn. App. 847, 965 P.2d 1131 (1998), does not suggest a different result. In *Templeton*, the Court of Appeals, Division One, recognized that an oral ruling does not supply an adequate basis for appellate review of a contempt order. *See* 92 Wn. App. at 853. The *Templeton* court instructed that a trial court must ensure written findings are entered, regardless of whether the court writes them or delegates the task to counsel. *Id.* DSHS contends that this language in *Templeton* supports the necessity of an immediate written order. Suppl. Br. of DSHS at 17. It does not.

The Court of Appeals here correctly observed that *Templeton* simply reiterated the requirement that a written contempt order with adequate findings is necessary for appellate review. *Sims*, 1 Wn. App. 2d at 482. The Court of Appeals correctly explained that *Templeton* does not stand for the idea that an oral contempt decision is not immediately effective. *Id.* This is consistent with our decision in *Head* that articulated the proper remedy for a lack of written findings is simply to remand for their entry. 136 Wn.2d at 624. Thus, it does not follow that because a written order is necessary for appeal, a written order is necessary before contempt sanctions become effective.

Finally, this is not a case where the terms of the court's oral order conflict with the subsequent written order. While a written order will take precedence over a prior oral

order in the event of a conflict,[11] that circumstance is not present here. DSHS's attempt to delay the effective date of the sanctions imposed by the superior court fails.

CONCLUSION

We reverse in part and affirm in part the Court of Appeals' decision. Neither the plain language of RCW 7.21.030 nor the context of this case warrant a finding that the State waived its sovereign immunity, either expressly or impliedly, and consented to the imposition of interest on the sanctions imposed. This is not a damages case, and under the circumstances presented, the statute does not provide comprehensive relief such that waiver may be implied. In other words, the statutory scheme does not support finding an implied waiver of sovereign immunity that would subject the State to interest payments on remedial contempt sanctions. On this issue we reverse the Court of Appeals.

With regard to the validity of the superior court's oral contempt orders, nothing in RCW 7.21.030 supports treating contempt orders differently from other court orders. An oral order is immediately effective, and the parties' rights to notice and appeal are protected by subsequent entry of a written order, the terms of which will control over any conflicting oral statement. Requiring an immediate written contempt order risks allowing the party in contempt to delay the imposition of sanctions while the order is formalized and runs contrary to the central purpose of the remedial contempt statute—to compel

---

[11] *See Dailey*, 93 Wn.2d at 458 (upholding the formal written decision of the court's dismissal of a criminal prosecution "in the furtherance of justice," despite earlier oral statements concerning dismissal as a sanction for failure to comply with discovery rules).

timely compliance with court orders. On this issue we affirm the Court of Appeals. We remand for further proceedings consistent with this opinion.

No. 95479-8

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Gordon McCloud, J._

_Yu, J._