**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58433-6-II |
| Respondent, | |
| v. | |
| JENNIFER M. TEITZEL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jennifer M. Teitzel appeals her convictions and exceptional sentence, arguing that (1) there was an insufficient factual basis for her guilty plea; (2) there was an insufficient factual basis for the aggravating factors upon which the exceptional sentence was based; (3) the aggravating factors stipulation she signed was invalid because she did not knowingly, intelligently, or voluntarily waive her right to a jury trial on the aggravating factors; and (4) she received ineffective assistance of counsel at sentencing. We disagree and affirm Tetizel's convictions and exceptional sentence.

FACTS

A.    UNDERLYING CONDUCT AND INVESTIGATION

Between June 2019 and August 2020, Teitzel used her position in the Lewis County Sheriff's Office to create refunds for inmates that were not actually owed. Teizel used the information of 12 inmates to secure refunds that were issued on debit cards bearing the inmates' names. Teitzel then used the debit cards to make personal purchases. In total, Teitzel stole

$10,478.17 from Lewis County through this process of using inmates' names to secure refunds on debit cards for her personal use.

In June 2022, the Lewis County Sheriff's Office discovered "unusual activity in [Teitzel's] accounting practices" and asked the Washington State Patrol for help in investigating the activity. Clerk's Papers (CP) at 217. By that time, Teitzel had already left her position at the Lewis County Sheriff's Office. Law enforcement contacted Teitzel and Teitzel "admitted to creating false refunds." CP at 219. Teitzel also "admitted what she was doing was wrong, but got in over her head and made poor choices." CP at 219.

B.      CHARGES AND PLEA BARGAIN

In March 2023, the State charged Teitzel with one count of first degree theft; 53 counts of first degree identity theft, with 53 counts of second degree identity theft in the alternative; and 30 counts of unlawful factoring of transactions. The information further alleged that Tetizel "used her position of trust, confidence, or fiduciary responsibility" at Lewis County to facilitate the theft and identity theft crimes.[1] CP at 2-76. In May 2023, the State filed an amended information without alleging the 30 counts of unlawful factoring; the other counts and the abuse of trust aggravators remained. The State also alleged for each count, that Teitzel had "committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." CP at 84-156.

---

[1] The abuse of trust aggravator was not alleged for alternative count 18—second degree identity theft. However, the abuse of trust aggravator was alleged under alternative count 18 in the amended information.

1.      Guilty Plea

In June 2023, Teitzel pleaded guilty to one count of first degree theft and 53 counts of first degree identity theft.  In her statement on plea of guilty, Teitzel wrote:

> Between June 4, 2019 and August 1, 2020, I stole $10,478.17 from Lewis County Jail.  On the dates in the attach [sic] Affidavit of Probable cause, I used the means of identification of other people in order to facilitate the theft, and knowingly targeted vulnerable individuals, to wit: incarcerated persons.  I used the names of incarcerated individuals to create debit cards in their names on 23 separate occasions, and used the cards on 30 separate occasions.  I also admit that I used my position as an employee of Lewis County Jail in order to facilitate the commission of the crime.

CP at 215.

Teitzel's statement on plea of guilty set out the standard sentencing range for each crime, but also warned that "[t]he judge does not have to follow anyone's recommendation as to sentence" and could "impose an exceptional sentence above the standard range if the State has given notice that it will seek an exceptional sentence, the notice states aggravating circumstances upon which the requested sentence will be based, and facts supporting an exceptional sentence are proven . . . by stipulated facts."  CP at 208.

2.      Stipulation to Aggravating Factors

Teitzel signed a "Stipulation to Aggravating Factors."  CP at 202.  In doing so, Teitzel "agree[d] and stipulate[d] to the existence of aggravating factors in this case."  CP at 202.  As for the aggravating factors, Teitzel stipulated that for all 54 counts, "she used her position of trust, confidence, and fiduciary responsibility to facilitate the commission of the crimes alleged."  CP at 202.  Teitzel further stipulated that she had "committed multiple current offenses and her high offender score (53 Points) results in some current offenses going unpunished."  CP at 202.

3

The stipulation also stated: "By stipulating, I am not agreeing to an exceptional sentence. I am merely agreeing that the factors listed above are a sufficient basis upon which to base an exceptional sentence should the Court choose to do so." CP at 202. Furthermore, Teitzel acknowledged "giving up the right to dispute and/or challenge these aggravating factors at trial." CP at 202.

C.      CHANGE OF PLEA HEARING

On June 7, 2023, the trial court held a hearing to address Teitzel's change of plea. At the hearing, defense counsel acknowledged there were "two aggravating circumstances that have been charged in the Amended Information that [Teitzel] is stipulating to." Verbatim Rep. of Proc. (VRP) at 4.

The trial court then conducted the following colloquy with Teitzel:

> THE COURT: . . . Ms. Teitzel, did you review the Statement of Defendant on Plea of Guilty carefully with your attorney?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Did you read it and understand it?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand the elements? Those are the things, each of which, the State is required to prove beyond a reasonable doubt in order to convict you of these charges?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand that the maximum penalties are ten years in prison and a $20,000 fine on each count?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand that standard range on Count 1 is 43 to 57 months?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And standard range on the remaining counts is 63 to 84 months?
> THE DEFENDANT: Yes, Your Honor.
>
> . . . .

4

> THE COURT: Do you understand the trial rights you have that are listed on pages one and two?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you understand that by pleading guilty you give up those rights? There will be no trial, no witnesses, no appeal, and the only thing left will be sentencing?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Understanding all of those things, do you still want to plead guilty here today?
> THE DEFENDANT: Yes, Your Honor.

VRP at 4-6. Teitzel also told the trial court she was making her pleas "freely and voluntarily." VRP at 7.

The trial court then addressed Teitzel's stipulation regarding the aggravating factors. The trial court asked Teitzel whether she was "stipulating to the aggravating factors . . . as set forth in this document," and Teitzel responded, "Yes, Your Honor." VRP at 7. Teitzel also confirmed that no one was forcing her to stipulate to the presence of aggravating factors. Finally, the trial court read Teitzel's statement on plea of guilty into the record and Teitzel acknowledged that it was a "true statement." VRP at 8.

The trial court accepted Teitzel's guilty plea, finding it was knowingly, voluntarily, and intelligently made; that Teitzel understood the nature of the charges and the consequences of her plea; and that there was a sufficient factual basis for the plea. The trial court also signed the aggravating factors stipulation, indicating Teitzel "understands the charge and the consequences of submitting the stipulation." CP at 203.

D.    SENTENCING

After accepting Teitzel's guilty plea, the trial court moved on to sentencing.

1.    State's Recommendation

In its sentencing memorandum, the State alleged that Teitzel was a Lewis County employee for 25 years and used her position in the Sheriff's Office to access private information she would not otherwise have had access to.  According to the State, this was a breach of the duty Teitzel owed to incarcerated individuals and the public as a public servant.  As for the free crimes aggravator, the State highlighted Teitzel's high offender score: 53 points.  The State argued that either aggravating factor, standing alone, would be sufficient for the court to impose an exceptional sentence.

Based on the two aggravating factors Teitzel stipulated to, the State recommended that the trial court impose 57 months of confinement on the theft count and 63 months of confinement for each count of first degree identity theft.  The State also requested that the trial court run the identity theft convictions concurrent to one another but consecutive to the theft conviction for an exceptional sentence of 120 months in confinement.

2.    Defense Recommendation

The record does not contain a sentencing memorandum from defense counsel.  Teitzel did, however, submit several letters of support from friends and family.

At sentencing, defense counsel asked the trial court "to impose a first time offender waiver" and sentence Teitzel to 90 days' confinement.  VRP at 12.  Defense counsel argued this was appropriate in light of Teitzel's lack of criminal history, her cooperativeness, and her remorse. Defense counsel also argued that a 90 day sentence was commensurate with the purposes of the

Sentencing Reform Act of 1981 (SRA). Defense counsel acknowledged that Teitzel "used her position of trust in the jail to—to facilitate this crime." VRP at 13.

Teitzel then addressed the trial court, apologizing for her "mistake" and stressed how much "remorse, . . . shame, embarrassment, and regret" she felt because of her actions. VRP at 16. Teitzel claimed she had "learn[ed] from it" and "moved forward." VRP at 16. Teitzel ended her statement by stating she knew the crimes were her fault and explaining that she had "no excuse" for what she had done. VRP at 17.

3.      Exceptional Sentence Imposed

The trial court sentenced Teitzel to an exceptional sentence of 108 months in confinement: 45 months on the first degree theft conviction and 63 months on each conviction for first degree identity theft to run concurrent to one and other but consecutive to the first degree theft convictions.

In discussing the exceptional sentence, the trial court acknowledged Teitzel's "lifetime of being crime free up until this," explaining that it was "knocking a year off" the State's recommendation "in recognition" of Teitzel's relative lack of criminal history. VRP at 18. The trial court explained that a first time offender sentence was not appropriate in light of the two aggravating circumstances. "First time offender might have been appropriate if there were one or two counts and if you had come forward. But that's not what happened. This went on for almost a year and a half . . . without a word to anybody." VRP at 19.

Following sentencing, the trial court entered written findings of fact and conclusions of law. Relevant here, the trial court found:

> The exceptional sentence is justified by the following aggravating circumstances found by the judge and stipulated to by the defendant:

1. Used position of trust, confidence, and fiduciary responsibility to facilitate the commission of the crimes alleged. See RCW 9.94A.535(3)(n).
2. Committed multiple current offenses and high offender score (53 Points) results in some current offenses going unpunished. See RCW 9.94A.535(2)(c).

CP at 230.

Based on those findings, the trial court made three relevant conclusions. First, the court concluded there were "substantial and compelling reasons to impose an exceptional sentence above the [standard] range." CP at 230. Second, the court concluded that "[t]he factors when considered together justify the exceptional sentence." CP at 230. Finally, the court concluded that "[t]he [aggravating] factors when considered separately, to the exclusion of the other, justify the exceptional sentence." CP at 231.

Teitzel appeals.

## ANALYSIS

### A. FACTUAL BASIS FOR GUILTY PLEA

Teitzel argues there was an insufficient factual basis for her guilty plea to first degree identity theft. Specifically, she contends that incarcerated individuals do not qualify as "vulnerable individuals" within the meaning of the identity theft statute. We disagree.

#### 1. Waiver

The State argues that Teitzel waived the issue because a valid plea makes pre-plea constitutional violations irrelevant unless they relate to the circumstances of the plea or the government's power to prosecute regardless of factual guilt.

8

In *State v. Amos*, the court explained that "a challenge to the factual basis for [a defendant's] guilty plea" is not waived by the guilty plea, whereas "a challenge to the sufficiency of the evidence" is waived. 147 Wn. App. 217, 228, 195 P.3d 564 (2008). To the extent Teitzel's argument is that there was insufficient evidence to show former inmates are "vulnerable people" within the meaning of the identity theft statute, Teitzel has waived that argument by pleading guilty. To the extent Teitzel's argument is that inmates are not vulnerable individuals, that argument goes to one of the elements of first degree identity theft and attacks the factual basis for her guilty plea. *See id.* (explaining that a defendant may challenge "the factual basis for [their] guilty plea" for the first time on appeal). Teitzel's argument, however, fails.

2.      There Is a Sufficient Factual Basis for Teitzel's Guilty Plea

The factual basis for a plea must satisfy all of the elements of an offense to be sufficient. *See State v. R.L.D.*, 132 Wn. App. 699, 705-06, 133 P.3d 505 (2006). Our review of whether there is a sufficient factual basis for a guilty plea is de novo. *State v. Snider*, 199 Wn.2d 435, 444, 508 P.3d 1014 (2022).

A person commits the crime of identity theft when they "knowingly obtain, possess, use, or transfer a means of identification or financial information of another person . . . with the intent to commit . . . any crime." RCW 9.35.020(1). For first degree identity theft, the person must "knowingly target[] a . . . vulnerable individual." RCW 9.35.020(2).

In her statement on plea of guilty, Teitzel wrote:

On the dates in the attach [sic] Affidavit of Probable cause, I used the means of identification of other people in order to facilitate the theft, and *knowingly targeted vulnerable individuals, to wit: incarcerated persons*. I used the names of incarcerated individuals to create debit cards in their names on 23 separate occasions, and used the cards on 30 separate occasions. I also admit that I used my

9

position as an employee of Lewis County Jail in order to facilitate the commission
of the crime.

CP at 215 (emphasis added). Thus, Teitzel's own statement on plea of guilty provides the factual

basis to satisfy all of the elements of first degree identity theft, including that she targeted

vulnerable individuals. Teitzel's challenge fails because there is a sufficient factual basis for

Teitzel's guilty plea.

B.    TRIAL COURT DID NOT ERR BY IMPOSING AN EXCEPTIONAL SENTENCE

Teitzel argues that there is no factual basis for the aggravating factors found by the trial

court. We hold that the record shows a factual basis for the trial court's imposition of an

exceptional sentence based on the free crimes aggravator, and because the trial court would have

imposed an exceptional sentence based on the free crimes aggravator alone, the trial court did not

err.

1.    Legal Principles

A trial court can impose an exceptional sentence if it finds, based on certain statutory

factors, substantial and compelling reasons to do so, and must explain its reasons in writing. RCW

9.94A.535, .535(2), (3). For an exceptional sentence, any factor other than the limited list of

aggravating factors found in RCW 9.94A.535(2) must be proved to a jury beyond a reasonable

doubt. RCW 9.94A.537(3); *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L.

Ed. 2d 403, *reh'g denied*, 542 U.S. 961 (2004).

2.    Free Crimes Aggravator is Sufficient to Affirm Teitzel's Exceptional Sentence

Because the highest offender score in the SRA is 9, a defendant with an offender score greater than or equal to 9 "will have the same standard range sentence regardless of the number of current or prior offenses." RCW 9.94A.510; *State v. Smith*, 7 Wn. App. 2d 304, 308, 433 P.3d 821 (alteration in original) (published in part), *review denied*, 193 Wn.2d 1010 (2019). "The free crimes aggravator anticipates such a scenario and allows the trial court to impose an exceptional sentence when '[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished.'" *Smith*, 7 Wn. App. 2d at 309 (quoting RCW 9.94A.535(2)(c)). The trial court can impose the free crimes aggravator without a factual finding by a jury. RCW 9.94A.535(2).

Here, Tetizel had an offender score of 53, reflecting "multiple current offenses" such that "some of the current offenses" would go unpunished. RCW 9.94A.535(2)(c). Thus, there was a sufficient factual basis for the imposition of the free crimes aggravator.

Tetizel argues that the free crimes aggravator cannot justify her exceptional sentence because the trial court did not "rely upon [the free crimes] aggravator" in its oral ruling. Amend. Br. of Appellant at 25. But Teitzel mischaracterizes the record; the trial court explicitly mentioned Teitzel's high offender score in explaining why it was imposing an exceptional sentence. Moreover, the trial court's written order controls over its oral ruling, and the trial court's written order found that the free crimes aggravator applied and concluded that it alone would justify an exceptional sentence. *See State v. Sims*, 193 Wn.2d 86, 99, 441 P.3d 262 (2019) ("[I]n the event of a conflict, a written order will control over an oral ruling.").

Finally, Teitzel makes several arguments regarding the free crimes aggravator in her reply brief, all of which we reject. First, Teitzel argues that the trial court erred by imposing an exceptional sentence on the mere "'belief that a defendant's criminal history warrants a longer term of punishment than the standard range would allow.'" Reply Br. of Appellant at 6 (quoting *State v. Hartley*, 41 Wn. App. 669, 672, 705 P.2d 821, *review denied*, 104 Wn.2d 1028 (1985)). However, the trial court did not impose an exceptional sentence because of Teitzel's criminal history; rather, the trial court imposed the exceptional sentence because of the high offender score resulting from the current crimes for which she was being sentenced.

Second, Teitzel argues the applicability of the free crimes aggravator is a product of the State's charging decisions, but provides no authority that the free crimes aggravator is inapplicable because the State charged a high number of crimes at once. Therefore, we reject this argument. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

Finally, Teitzel argues that her sentence was "wildly inconsistent with the purpose of the SRA" because she did not commit a violent crime and was a first time offender. Reply Br. of Appellant at 9. But Teitzel cites no authority prohibiting an exceptional sentence for first time offenders, or holding that the free crimes aggravator is inconsistent with the purposes of the SRA. Thus, we reject this argument. *See DeHeer*, 60 Wn.2d at 126 ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

We hold that there was a sufficient factual basis for the free crimes aggravator. Therefore, regardless of whether there was a sufficient basis for the abuse of trust aggravator, the exceptional sentence stands because the record shows that the trial court would have imposed the same exceptional sentence on the basis of the free crimes aggravator alone.

3.     Stipulation on Aggravating Factors Invalid

Alternatively, Teitzel argues that to the extent the aggravator stipulation provided the factual basis for her exceptional sentence, the aggravator stipulation was invalid because she did not knowingly and voluntarily enter into the aggravator stipulation.

Teitzel's argument fails in light of the trial court's finding that the free crimes aggravator applied and justified an exceptional sentence. The trial court's imposition of an exceptional sentence based on a free crimes aggravator did not require the stipulation or a jury finding. RCW 9.94A.535(2)(c). And the record is clear that the trial court would have imposed an exceptional sentence based on the free crimes aggravator alone. Thus, even without the stipulation, the record supports the imposition of an exceptional sentence based on the free crimes aggravator. Therefore, Teitzel's alternative argument fails.

C.     TEITZEL DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL

Teitzel argues she received ineffective assistance of counsel for two reasons: (1) "[t]he effect of the stipulation [to aggravating factors] was not fully explained" and (2) defense counsel failed to present mitigating evidence at sentencing. Amend. Br. of Appellant at 41. We disagree.

1.     Legal Principles

Both the Sixth Amendment to the United States Constitution and article I, section 22 of our state constitution guarantee criminal defendants the right to effective assistance of counsel. *State*

13

*v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance by counsel, and (2) that counsel's deficient performance prejudiced them. *Id.* at 32-33. An ineffective assistance claim fails if either deficient performance or prejudice is not shown. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. This court applies "a strong presumption that counsel's performance was reasonable." *State v. Lawler*, 194 Wn. App. 275, 289, 374 P.3d 278 (published in part), *review denied*, 186 Wn.2d 1020 (2016). "If defense counsel's conduct can be considered to be a legitimate trial strategy or tactic, counsel's performance is not deficient." *Id.* As for prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

2.      No Ineffective Assistance of Counsel

The record shows that Teitzel was properly advised of the rights she was waiving by pleading guilty and the potential consequences of the Stipulation to Aggravating Factors. Teitzel stated verbally and in writing that she understood the rights she was waiving by pleading guilty and stipulating to the presence of aggravating factors, that defense counsel reviewed and fully explained both documents to her, that she understood the documents, and that she had no questions for the trial court.

Teitzel's self-serving statement that she "would [not] have signed a stipulation to that sentence had she been fully informed of the consequences thereof." Amend. Br. of Appellant at

Teitzel's self-serving statement is, by itself, inadequate to overcome the presumption of effective assistance. *State v. Cervantes*, 169 Wn. App. 428, 434, 282 P.3d 98 (2012). And there is not a single citation to the record in Teitzel's argument that she only signed the stipulation on the advice of counsel without an understanding of its potential consequences. Thus, Teitzel fails to show that defense counsel's performance was objectively unreasonable.

Teitzel argues that defense counsel should have presented evidence that she educated herself, sought therapy after realizing the wrongness of her crimes, and only committed her crimes to pay back medical debt. But nothing in the record indicates such evidence exists.[2] Furthermore, Teitzel addressed the trial court at sentencing and did not mention therapy, education, or any medical issues or debt. Instead, Teitzel said she had no excuse for her crimes. Moreover, even if defense counsel should have presented mitigating evidence, Teitzel fails to show that if defense counsel had presented such evidence, the trial court would not have imposed an exceptional sentence. Thus, Teitzel's ineffective assistance of counsel claim fails.

## CONCLUSION

There was a sufficient factual basis for Teitzel's guilty plea to the first degree identity theft charges. There also was a sufficient factual basis for the free crimes aggravator that supported the exceptional sentence. Thus, the trial court did not err in imposing an exceptional sentence. Furthermore, Teitzel fails to show she received ineffective assistance of counsel at sentencing. Accordingly, we affirm Teitzel's convictions and exceptional sentence.

---

[2] The State moved to strike the alleged factual statements from Teitzel's opening brief because they were unsupported by the record, and a commissioner of this court granted the motion. To the extent Teitzel relies on evidence not in the record, a personal restraint petition is the proper proceeding. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

No. 58433-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Veljacic, A.C.J.